UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRIS N.A., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 11 C 2026 |
| WILLARD B. MCCARDELL and SHERAN MCCARDELL, | ) ) Judge John W. Darrah |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Harris Bank, N.A.'s ("Harris") Motion for Summary Judgment. Harris filed a one-count Complaint, seeking judgment against Willard McCardell and Sheran McCardell (collectively, the "Defendants") for breach of a demand note in the principal amount of $8,000,000.00. Sheran has filed a Cross-Motion for Summary Judgment as to her Third Affirmative Defense.

## BACKGROUND

The following facts are taken from Harris's statements of undisputed material facts submitted in accordance with Local Rule 56.1.[1] Harris is a national banking association, with its main office located in Chicago, Illinois. (Pl.'s 56.1(a)(3) ¶ 1.)

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Under Local Rule 56.1(b)(3)(C), the nonmoving party may file a statement of additional facts, and the moving party may submit a concise reply under Local Rule 56.1(a)(3).

Defendants reside at 355 Olivewood Court, Rochester, Michigan. (*Id.* ¶ 2.) This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332.

Willard was the President of Innatech, LLC ("Innatech") and was the managing member of Invoak, LLC, which was Innatech's primary member. (Defs.' 56.1(b)(3) ¶ 1.) In 2007, Innatech required capital for its businesses operations. (*Id.* ¶ 2.) Harris's Commercial Lending Division would not authorize a loan to Innatech. (*Id.*) In August 2007, Harris's Wealth Management Division agreed to make an $8 million loan to Willard to: (a) retire a $3.1 million loan previous made by Harris to Willard and Sheran that was used for Innatech's business operations; (b) retire a $1 million loan previous made by Theodore W. Brickman to Willard that was solely used for Innatech's business operations; and (3) provide $4.9 million in working capital for Innatech. (*Id.* ¶ 3.) On December 12, 2006, Defendants executed a loan in the amount of $3.1 million. (*Id.* ¶ 11.)

On August 28, 2007, Defendants executed a Loan Authorization Agreement in favor of Harris. (Pl.'s 56.1(a)(3) ¶ 6.) Also on August 28, 2007, in conjunction with the Loan Agreement, Defendants executed a Demand Promissory Note in the principal amount of $8,000,000.00 in favor of the Bank (the "Note").[2] On August 30, 2007, the

---

[2] Defendants deny some of Harris's statements of fact but fail to cite to "*specific references to the affidavits, parts of the record, and other supporting materials relied upon,*" as required by Local Rule 56.1(b)(3)(B). *See Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir. 1995). Also, Defendants sometimes only refer the Court to their Rule 56.1 statement of additional facts but provide no specific paragraph number or citation to record evidence. Failure to properly refute the opposing party's statements of fact results in the opposing party's facts being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

2

$3.1 million December 2006 loan was retired and satisfied by the $8 million August 2007 loan. (Defs.' 56.1(b)(3) ¶ 13.)

On February 28, 2008, April 30, 2008 and March 12, 2009, Defendants executed Amendments to the Loan Agreement, each of which, among other things, extended the maturity date of the Loan Agreement and the Note (together with the Loan Agreement, the "Loan Agreement"). (Pl.'s 56.1(a)(3) ¶ 7.) The Third Amendment to the Loan Agreement extended the maturity date of the Loan Agreement and the Note to December 31, 2010.

Defendants are in default of the Loan Agreement and the Note for their failure to make payment in full to Harris on or before the December 30, 2010 maturity date. (*Id.* ¶ 10.)[3] As of August 23, 2011, the outstanding principal balance due under the Loan Agreement and the Note totals $8,000,000.00, together with accrued interest of $456,691.25. (*Id.* ¶ 11.) To date, despite demand from Harris, Defendants have failed to make payments in full under the Loan Agreement and the Note. (*Id.* ¶ 12.) Harris has performed all of its obligations pursuant to the Loan Agreement and the Note. (*Id.* ¶ 13.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-

---

[3] Defendants assert evidentiary objections to this statement of fact, as well as others, which will be discussed below.

24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

### *Harris's Motion for Summary Judgment*

Harris argues that it is entitled to summary judgment on its breach-of-contract claim because there is no disputed issue of material fact relating to Defendants' liability on the Note. The parties agree that Illinois law governs. Defendants' response arguments are based largely on objections to Harris's use of evidence.

#### Defendants' Evidentiary Objections

Harris has submitted the affidavit of Kay Wesson, Harris Bank Vice President, in support of its Motion. Wesson avers as to Harris's system for maintaining loan records and payment history and further avers that the copies of the Loan Agreement and the Note attached to Harris's Complaint are true and correct. Defendants argue that Wesson's affidavit fails to comply with the business-records exception to the hearsay rule under Federal Rule of Evidence 803(b)(6) and fails to satisfy Federal Rule of Evidence

4

901(b)(9). Federal Rule of Civil Procedure 56(c)(2) provides, "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

Federal Rule of Evidence 803(6) provides, in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (6) Records of Regularly Conducted Activity. – A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness.

In order to be "admissible as business records under Fed. R. Evid. 803(6) . . . a proper foundation [must be laid] as to the reliability of the records." *Collins v. D.J. Kibort,* 143 F.3d 331, 337 (7th Cir. 1998) (*Collins*). To establish a proper foundation at the summary-judgment stage, "the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records." *Woods v. City of Chicago,* 234 F.3d 979, 988 (7th Cir. 2000) (*Woods*).

"A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of regularly conducted business activity, and that it was the regular practice of

that business to make such records." *United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999) (citing *Collins*, 143 F.3d at 337). Once the proponent of a summary has established that certain records are, in fact, business records, a summary of those records is admissible under Rule 1006, subject to that rule's separate requirements. *AMPAT/Midwest, Inc. v. Ill. Tool Works, Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990).

Contrary to Defendants' assertion, Wesson's affidavit satisfied Rule 803(6). Wesson avers as to matters based on her personal knowledge. (Wesson Aff. ¶ 1.) For example, Wesson avers that as Vice President, she has access to Harris's loan records, including those of the Defendants. (*Id.* ¶ 2.) Further, Wesson avers that she has direct knowledge of Harris's computer system, in which Defendants' loan records and loan payment history are stored, and the account tracking software known as "AllTel." (*Id.* ¶¶ 1-2.) Wesson explains in detail how the AllTel software operates and that it accurately reflects the amounts due and owing on a loan. (Wesson Aff. ¶ 5.) With her affidavit, Wesson has demonstrated that she is "qualified to speak from personal knowledge" that Defendants' loan records and payment history are admissible business records. *Woods*, 234 F.3d at 988.

Defendants' reliance on *United States v. Brown*, 553 F.3d at 768 (5th Cir. 2008) (*Brown*), is inapposite. There, the court held that a witness was not qualified to testify regarding the defendants' business's computer records because he had never worked for the defendants' business and did not have personal knowledge of the defendant's business records. *Id.* at 792-793. Wesson's personal knowledge of Defendants' loan record and the AllTel system satisfied the requirements of Rule 803(6), contrary to the deficiencies presented by the witness in *Brown*.

6

Defendants' argument that Harris has failed to satisfy Rule 901(b)(9) is also not persuasive. Rule 901(a) explains the general requirement that authentication or identification of evidence is a precondition to its admissibility, "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." It does not require, as Defendants argue, Wesson to testify that the "process or system used by Wesson to obtain the information was correctly employed or properly operating to produce accurate results." (Resp. at 8.) "[A]ll Rule 901(a) demands is 'sufficient evidence' to find that the evidence in question 'is what its proponent claims.'" *Alexian Brothers Health Providers Ass'n, Inc. v. Humana Health Plan, Inc.*, 608 F. Supp. 2d 1018, 1023 (N.D. Ill. 2009) (quoting Fed. R. Evid. 901(b)(9)). Harris has met this requirement here.

Next, Defendants argue that Wesson's testimony that Defendants owe accrued interest of $456,691.25 as of August 23, 2011, and interest of $722.22 per day from August 23, 2011 to present, is not properly supported. As discussed above, Wesson, as Vice President of Harris, has demonstrated her personal knowledge of Defendants' loan record. Aside from calling into question Wesson's numbers, Defendants offer no counter-affidavits or other record evidence to show that these numbers are genuinely disputed. As such, Defendants' argument lacks merit.

### Defendants' Affirmative Defenses

Defendants assert four Affirmative Defenses, titled as follows:[4] (1) "Failure to State Claim: The Documentation that Serves as the Basis for the Complaint Does Not

---

[4] Willard and Sheran filed separate Answers but assert the same affirmative defenses. In fact, the affirmative defenses asserted by each Defendant appear to be identical.

7

Document the Actual Transaction Between the Parties"; (2) "Failure to State Claim: Promissory Note that Serves as Basis for Claim has been Altered and/or Amended"; (3) "Failure to State Claim: Lack of Consideration";[5] (4) "Breach of Implied Duty of Good Faith and Fair Dealing."

Defendants' First Affirmative Defense is nonsensical. Defendants have not produced any document that supports their theory. Defendants allege that $8 million was advanced pursuant to an agreement "that was not reduced to writing." (Answer, Affirmative Defenses ¶¶ 1-2.) To the extent Defendants' First Affirmative Defense is based on an oral contract, this defense is barred by the Illinois Credit Agreements Act, 815 ILCS 160, *et seq.* ("ICAA"). Section 2 of the ICAA provides that "[a] debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing . . . ." 815 ICLS 160/2.

In their Second Affirmative Defense, Defendants appear to assert that the promissory note has been amended multiple times and that Harris has failed to make a demand for full payment on the amended note. This affirmative defense fails based on the ICAA's express requirements discussed above.

For the same reason as to the First Affirmative Defense, Defendants' Fourth Affirmative Defense is not controlling. Defendants allege that Harris had a practice of orally extending the Loan Agreement and by not extending the Loan Agreement in a fourth amendment, Harris breached the duty of good faith and fair dealing. Pursuant to 815 ILCS 160/3(3), in defense of an action against him, a debtor cannot assert that a new

---

[5] Sheran relies on this affirmative defense in her Cross-Motion; thus, it will be addressed below.

credit agreement is created, based on "the agreement by a creditor to modify or amend an existing credit agreement," unless the requirements of 815 ILCS 160/2 are satisfied. 815 ILCS 160/3(3). As set out above, 815 ILCS 160/2 requires that a credit agreement be in writing for a debtor to maintain an action.

Accordingly, Defendants' First, Second, and Fourth Affirmative Defenses do not bar Harris's Motion for Summary Judgment.

*Sheran McCardell's Cross-Motion for Summary Judgment*[6]

Sheran moves for summary judgment on Defendants' Third Affirmative Defense, in which she argues there is a lack of consideration for the Loan Agreement and the Note. Defendants further argue that the Loan Agreement and the Note are void as to Sheran because she never received any of the loan proceeds. (Resp. at 16.)

Based on Defendants' own statements of fact, Sheran did receive consideration for the Loan Agreement. Defendants state that the $8 million loan from Harris to Defendants would be used, among other things, to "repay the existing loan made by the bank in the principal amount of $3,100,000 . . . ." (Defs.' 56.1(b)(3) ¶ 10.) The $3.1 million loan referred to the "loan from Harris Bank to Bill and Sheran McCardell executed on December 22, 2006." (*Id.* ¶ 11.) Further, Defendants state, "On August 30, 2007, the $3.1 million loan from the 12/22/06 Agreement was retired and

---

[6] To its reply, Harris attaches what purports to be a Forbearance Agreement signed by both Defendants on October 9, 2009, in which Defendants acknowledged they were in default on the Loan Agreement and released Harris from all demands, controversies, acts or omissions, and claims of "every kind or nature whatsoever." (Reply at 10.) Harris, however, fails to provide any foundation for this document. As such, it is not considered in ruling on either Motion pending before the Court.

9

satisfied by the $8 million August 2007 loan." (*Id.* ¶¶ 16-17.) Thus, Sheran received consideration for the Loan Agreement in the form of cancellation of a previous debt.

Sheran also argues there was no performance of the loan by Harris with respect to Sheran because Sheran "never received nor controlled a dime of the loan proceeds." (Reply at 7.) Defendants cite no law to support their assertion. Further, as stated above, the proceeds from Harris's $8 million loan were used, in part, to retire Defendants' $3.1 million loan. Sheran notes that the remainder of the loan amount went directly to Willard's account; however, this does not support a finding that Harris did not perform under the terms of the Loan Agreement.

Furthermore, consideration need not be monetary. *F.H. Prince & Co., Inc. v. Towers Fin. Corp.*, 656 N.E.2d 142, 147 (Ill. App. Ct. 1995) ("It is not essential that [consideration] import a certain gain or loss to either party, but is sufficient if the party in whose favor the contract is made parts with a right which it might otherwise exert.") (internal citation and quotation omitted). Here, Harris loaned Defendants $8 million. As Defendants allege, one of the purposes of the loan was to retire a prior note that Defendants executed in favor of Harris. (Aff. Defenses ¶¶ 16-17.) Defendants further allege that Sheran was a party to the Loan Agreement; specifically, Defendants allege that "Harris attempted to rope in assets belonging to Sheran McCardell as collateral for the loan by making her a signatory on the August 28, 2007 LAA and the Demand Promissory note."). Therefore, that Sheran alleges she did not receive any of the $8 million of loan proceeds does not mean there was no consideration. Harris provided Defendants an $8 million loan to pay off a previous loan and Sheran was a party to the

Loan Agreement, which is sufficient consideration. Accordingly, Sheran's Cross-Motion for Summary Judgment is denied.

As discussed above, Defendants' evidentiary objections to the Loan Agreement and the Note have been overruled and their Affirmative Defenses held to lack merit. To establish a breach-of-contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach; and (4) damages. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Carlton at the Lake, Inc. v. Barber*, 928 N.E.2d 1266 (Ill. 2010). In conclusion, Harris has demonstrated that there is no genuine issue of material fact that Defendants are in breach of the Loan Agreement and the Note. Defendants have presented no evidence demonstrating that there are any disputed issues of fact. Accordingly, Harris's Motion for Summary Judgment is granted.

## CONCLUSION

For the reasons set forth above, Harris's Motion for Summary Judgment [12] is granted. Sheran McCardell's Cross-Motion for Summary Judgment [18] is denied. Civil case is terminated.

Date: 8-15-12

JOHN W. DARRAH
United States District Court Judge